# CASES DETERMINED

# January Term, 1915.

---

SECORD, Administratrix, Respondent, vs. JOHN SCHROEDER
LUMBER COMPANY, Appellant.

*January 14—February 9, 1915.*

*Master and servant: Death: Assessment of damages: Matters to be considered: Evidence: Mortality tables: Excessive damages.*

1. In assessing the damages sustained by a widow by reason of the death of her husband, the recovery being limited by law to the pecuniary benefits which she lost thereby, the following matters should be considered: (1) the average earning power of the deceased at the time of his death; (2) his expectancy of life; (3) his probable average earning power during such expectancy; (4) the proportion of his earnings which with reasonable certainty would have reached the wife; (5) the present worth thereof; (6) the amount it would take to purchase an income during the expectancy of his life equal to the amount the wife would probably have received out of his earnings.

2. Mortality tables are not conclusive as to the expectancy of life, but they are persuasive evidence of it, and if unopposed by any other evidence should be controlling.

3. An award of $5,500 for death of a workingman sixty-two years of age whose average earning capacity was about $727 per year, and whose probable earning capacity during his expectancy of life would not have exceeded $500 per year, of which probably not over $300 per year would have reached his wife, is *held* excessive, and plaintiff is given the option of taking a judgment for $4,000 or submitting to a new trial. SIEBECKER and KERWIN, JJ., dissent.

APPEAL from a judgment of the circuit court for Ashland county: G. N. RISJORD, Circuit Judge. *Reversed.*

Action to recover compensation for damages caused the

surviving wife of Joseph Secord by reason of his death, said to have happened through actionable negligence of defendant.

There was evidence, which, in a reasonable view, tended to establish the facts relied upon by plaintiff. There was no question but that the deceased, while in performance of his duties as an employee of defendant, came to his death at the time and place and under substantially the circumstances alleged in the complaint. He was struck with a stick with which he was trying to put a belt on an overhead rapidly revolving pulley. The pulley struck the end of the stick and drove it back with force against his body. It hit him in a vital part, causing his death in a few hours. He was about sixty-two years of age. He had a wife about fifty-two years of age. There was evidence tending to prove he was capable of earning from $600 to $750 per year. His work required him to be away from home considerable of the time. He had not accumulated any property up to the time of his death; had not been able to more than keep up his personal expenses and those of his family. His average yearly earnings, for the two years immediately preceding his death, did not exceed $727.

The trial court was of the opinion that the evidence presented a jury question which might, on the evidence, be reasonably so answered as to render defendant liable. The cause was submitted accordingly. The jury found all controverted facts as to liability in plaintiff's favor and assessed the damages at $5,500. Judgment was rendered thereon. Proper motions, rulings, and exceptions appear, saving several questions for review on appeal, and among them whether the verdict was excessive.

For the appellant there was a brief by *Doe & Ballhorn* and *Wm. F. Shea,* and oral argument by *J. B. Doe.*

For the respondent there were briefs by *Sanborn, Lamoreux & Pray,* attorneys, and *H. B. Walmsley,* of counsel, and oral argument by *F. B. Lamoreux.*

Secord v. John Schroeder L. Co. 160 Wis. 1.

MARSHALL, J. It seemed best to give only a fair outline of the case except on the damage feature. We have examined all questions presented with care and are not able to perceive wherein appellant was prejudiced by any rulings complained of, except as to damages. That requires discussion, indicating the basis of the conclusion to which we have arrived.

As indicated in the statement, the most favorable view of the evidence that can be taken in respondent's favor is that the average yearly earning capacity of deceased before he died did not exceed $750. It is quite a stretch of judgment to assume, reasonably, that, had he lived, he would have averaged $500 per year for his expectancy of life, and that his wife would have benefited therefrom $300 per year. So we must test the reasonableness of the recovery from that viewpoint.

In considering the question before us, it must be appreciated that it is largely *res integra*. Precedents, in such a case, are of little value. I think that is particularly so in view of the changed conditions that have come about in the better appreciation of the real underlying basis of liability for losses caused by industrial accidents; that it does not, necessarily, suggest any moral turpitude on the part of the employer; but, instead, that such losses are largely inevitable misfortunes in which joint actors, the employer and employee, in producing the products designed to administer to the legitimate desires of consumers, are concerned, the burden of which naturally enters into the cost of such products and, in the end, must be, at the money measurement, liquidated by the consumers, the same as wages paid to employees and the use of capital which enable them to make their activity efficient.

So the visible agency to repair the losses to those upon whom the same first fall is but a mere conduit by means of which they finally reach their inevitable resting place and are absorbed into the products, and, by so much, enhance the legitimate selling price thereof. In reality, it is the world of

consumers which owes to the laborer and his dependents the duty of compensating him and them for his and their sacrifices.

Looking at the matter in that aspect, much of the former instrumentalities by which personal injury losses were, formerly, confined, seemingly, to or near to the point of origin, have been swept away. In the higher, brighter, purer atmosphere of justice as between man and man and society at large, I think we should look at such a situation as that before us, keeping in mind that the people have, so far as practicable, established, as matter of public policy, an equitable standard of measurement. Not that such standard of measurement should be controlling; but that it should have some consideration in determining what is right.

That, after adherence to the harshness of the common law for generations, there has been the rapid progress we see to the condition of the present, rendering personal injury losses in services remediable in all cases under the Workmen's Compensation Law and largely so independently of it,—is a marvelous achievement. It is sublime. Will there be a retrogression? If there is danger of it the better way of guarding against it is to strive to appreciate its logic. In that lies the greatest certainty of maintaining the advancement made. It will promote a higher degree of deliberation and wisdom in measuring personal injury losses upon the theory that nothing is due for punishment nor anything by way of enforced charity,—nothing but the passing of a just equivalent, under all the circumstances, for the loss to the injured servant or his dependent and the employer as the real servants—in a broad sense, sharers in a common misfortune—from the mass of mankind who are the real served and beneficiaries of the industry in which such common sufferers were engaged. I can see only an awakening of a long sleeping conscience which has wrought this beneficent change which binds up the physical and mental wounds of the toilers, so far as practicable, with a minimum of waste and with no necessarily heavy burden

and none which is not an incident of duty. Contemplating the past from which we have emerged and the great need for even-handed administration under the new conditions, I sometimes wonder "is the luminous spot we distinguish one that vanishes?"

What I have said in the preceding paragraph is more personal than impersonal and does not apply in its full scope except under the Workmen's Compensation Act, though the court is conscious that it is not unworthy of consideration to some extent in any case and particularly where, as here, the recovery is limited by law to the pecuniary benefits which the survivor has lost by the death of her husband. In such a case—unlike those where pain and suffering, disfigurement, diminution of capacity to enjoy life, and other elements are subjects of compensable loss, notwithstanding there is no standard by which they can be gauged except the judgment of a jury, which may take a wide range and not be manifestly excessive by any rule which the court can lay down—there are some definite data to figure from: First, the average earning power of the deceased at the time of his death; second, his expectancy of life; third, his probable average earning power during such expectancy, considering his condition of health, what he had been accustomed to earn, and all the circumstances bearing on the question; fourth, the proportion of such earning capacity which with reasonable certainty would have reached the wife had he not been taken away; fifth, the present worth thereof; and sixth, the amount it would take to purchase an income during the expectancy of his life equal to the amount the dependents would probably have received out of his earnings.

Keeping in mind that, in a case of this sort, we must deal with reasonable certainties, so far as practicable, both as to evidentiary circumstances and the final result, instead of mere possibilities, a pretty definite basis of calculation can be stated.

The average earning capacity of the deceased is determin-

able as a fact from evidence. The jury could not well have determined the same higher than the claim now made by counsel for respondent, around $727 per year. Let us assume that they did so determine, and that it is a verity in the case. The jury could not reasonably have found the average earning power for the balance of the intestate's life would have exceeded $500 per year, or that over $300 of that would have reached the wife. We may assume all these circumstances to be verities. The amounts are probably too high, though the jury may have thought otherwise, and another jury properly instructed on the same evidence, we may well assume, would not place the figures lower. The expectancy of life could not, with reasonable certainty, have been placed by the jury, and cannot be much, if any, higher, than the experience tables show. So we may take the number of years' earning power by such tables. Counsel claim for that 12.86 years. That is too high by some and too low by other tables. It is 12.61 by the Actuaries table of one of our greatest insurance companies; 12.66 by the Hm. table; 12.86 by the American table; 13.31 by the Carlisle table; and 12.28 by the Northampton table. The average is 12.73.

On the basis indicated, the entire earnings which the wife could have fairly expected to receive during her husband's life is $3,819, and the present worth not over $2,900.

Take another basis and the result is not far different. To purchase for the widow payment of $300 per year for the expectancy of life which has been taken from her, would require about $3,030.

Take a third basis, the Workmen's Compensation schedule, and the widow would be entitled to about $3,000.

The amount awarded would buy a yearly pension for the widow of about $550, or more than the entire wages the deceased could reasonably have expected to earn for the balance of his days.

As we have said, to consider $300 per year the value of the

life of the deceased for the balance of his days, had he lived, to his wife, would be pretty large. Cutting it down to one half and the value of his life to the wife by either of the former methods of compensation, would be about $2,500.

Enough has been said to demonstrate that the award of $5,500 we find here, is far too much. That cases may be found where the award has been equally high, does not change the aspect of the matter. We are looking at it from the viewpoint of present conditions and with reasonably definite data to compute from. We must not shut our eyes, either to such conditions or to such data. We cannot do so and give even-handed justice in such situations as this.

We realize that the mortality tables are not conclusive as to the expectancy of life, but they are persuasive evidence of it, and unopposed by any other evidence, should be controlling. This court has used them as a basis for compensation and so have others. 1 Joyce, Dam. § 661. Some courts have held that such tables, in the absence of evidence to discredit their story, stand as to the particular case.

The method of computation we have used has been approved here time and again. In *Rudiger v. C., St. P., M. & O. R. Co.* 101 Wis. 292, 77 N. W. 169, the court held, in effect, that the sum which would make an annuity to the defendant equal to the reasonable expectation of contributions by the deceased during his life, is the limit of recovery.

Thus it will be seen that around $3,000 fully measures the loss to the beneficiary of this litigation by the death of her husband, in the absence of some special circumstances. It may be that the deceased had more than the normal prospect for continuation of life. There is nothing to indicate it in the evidence, except, perhaps, that he was of robust health at sixty-two. It may be that the jury were warranted in finding that he had somewhat more than an average prospect of life. They must have thought so in order to have found as they did, and also failed to understand that the pecuniary

loss of the wife was the limit.    The present worth of a few more years than the ordinary expectancy would not raise the amount which a jury could reasonably find above $4,000.    We are inclined to hold that in case of another trial a jury properly instructed would probably not assess the damages at less than $4,000 and will dispose of the case accordingly.

*By the Court.*—The judgment is reversed, and the cause remanded with an option to plaintiff to take judgment for $4,000 and costs within twenty days after the filing of the *remittitur* or have a new trial.

Upon motion of the respondent the foregoing mandate was, on March 23, 1915, amended so as to read:

*By the Court.*—Judgment reversed with costs, and cause remanded with option to plaintiff to take judgment for $4,000 and costs, with interest from the date of the verdict, within twenty days from the filing of the *remittitur,* or have a new trial.

No costs were awarded on the motion.

SIEBECKER and KERWIN, JJ., dissent from so much of the judgment as reduces damages.