[Civ. No. 7477. First Appellate District, Division One.—May 29, 1931.]

ELLEN E. MURPHY et al., Respondents, v. NATIONAL ICE CREAM COMPANY (a Corporation) et al., Appellants.

484

Joseph E. Reardon, Benjamin F. Curtaz and Enid Childs for Appellants.

Robert E. Fitzgerald for Respondents.

THE COURT.—Shortly after the noon hour on August 1, 1927, a truck owned by the defendant National Ice Cream Company and driven by the defendant Florence McCarthy collided with a Ford coupe owned and driven by Mrs. Letitia Howard, at the intersection of Lombard and Broderick Streets in San Francisco. The truck was traveling easterly along Lombard Street and the coupe was proceeding southerly along Broderick. Riding with Mrs. Howard at the time as her guests were Mrs. Ellen Murphy, one of the plaintiffs above named, and the latter's granddaughter, Helen Legeal, seventeen years of age. The force of the impact hurled the coupe across the intersection, up the thirteen per cent grade on Broderick Street for a distance of twenty-five or thirty feet, where it turned over on its side in a reversed position, pointing back down toward the intersection, and injuring Mrs. Howard and Mrs. Murphy. Two actions for damages grew out of the collision, one being instituted by Mrs. Howard, with which we are not here concerned, and the present one by Mrs. Murphy, in which her husband joined to recover the damage he claimed to have sustained as a result of the injuries to his wife. Mrs. Howard was made a party defendant, but subsequently the action as to her was dismissed. At the trial a jury awarded plaintiffs a verdict for $25,000, and from the judgment entered thereon this appeal has been taken.

The trial took place about two and a half years after the accident happened, and medical testimony was given to show that Mrs. Murphy's injuries were of a serious nature, extremely painful and permanent in character, among them being a fracture of the odontoid process of the first cervical vertebra, which at the time of the trial had reunited with poor alignment; also fractures of the spinous processes of the fourth and fifth cervical vertebrae which, in healing, had fused, with consequent additional rigidity of the neck; and that the combined injuries were of a permanent character,

which will necessitate the wearing of a steel and leather collar for the rest of her life, and continue to cause her daily pain and suffering. It was also shown by way of special damage that prior to the accident Mrs. Murphy assisted her husband in his business, and that between the dates of the accident and the trial he had expended approximately $2,150 for secretarial work previously done by Mrs. Murphy; also more than $6,940 for medical and surgical treatment, hospital services, and nurses, and that her condition would demand continued medical treatment and nursing.

Defendants do not seek a reversal upon the grounds of excessive verdict or insufficiency of evidence to sustain the conclusions reached by the jury upon the question of the responsibility for the accident; but they contend that the jury was erroneously instructed on three points and was prejudiced by an unfair cross-examination of one of their witnesses. The first instruction complained of relates to the life expectancy of Mrs. Murphy. In this regard the record shows that as part of their case plaintiffs introduced in evidence the American Experience Tables of Mortality, which disclosed that the life expectancy of a person fifty-four years of age (Mrs. Murphy's age) was 18.9 years. The tables were received in evidence without objection, and defendants did not attempt to controvert the accuracy thereof, and in connection therewith the court gave the following instruction: ''It is claimed by the plaintiffs in this case that the injuries alleged to have been suffered by the plaintiff, Ellen E. Murphy, are permanent in character. It is for you to determine from the evidence whether they are such in fact. And in this connection I instruct you that if you do find her injuries to be permanent the life expectancy of the plaintiff Ellen E. Murphy is eighteen years.'' Defendants contend that the question of life expectancy is under all circumstances one of fact for the jury to determine and that the effect of the instruction above quoted was to deprive the jury in the present case from passing upon that question.

It is doubtless true that the question of life expectancy is primarily, at least, one of fact; and it is held universally that while life tables are admitted as convenient aids and perhaps afford the most satisfactory basis for an estimate, they are not conclusive upon the subject and that the jury may nevertheless make their own estimates from sur-

rounding circumstances, such as the age, health, habits and physical condition of the person whose expectancy is sought to be established (*Borough* v. *Minneapolis & St. L. Ry. Co.*, 191 Iowa, 1216 [184 N. W. 320]; *Morrison* v. *McAtee,* 23 Or. 530 [32 Pac. 400]). ■ The law presumes, however, that a person of a certain age is in the average condition of health and strength of other persons of the same age (*Cusick* v. *Boyne,* 1 Cal. App. 643 [82 Pac. 985]; *Dallas* v. *De Yoe,* 53 Cal. App. 452 [200 Pac. 361]), and where it is claimed that the person's health is such as to remove him from the general classification, it is incumbent upon the party so claiming to prove it (*Cusick* v. *Boyne, supra*); and in some jurisdictions it is held that in the absence of such proof the tables are controlling (*Little* v. *Bousfield & Co.*, 165 Mich. 654 [131 N. W. 63], citing numerous cases; *Secord* v. *John Schroeder Lumber Co.,* 160 Wis. 1 [150 N. W. 971]). The latter rule has not been given express approval in this state, so far as our attention has been called, but in the case of *Townsend* v. *Briggs,* 99 Cal. 481 [34 Pac. 116], wherein the question of the weight of the mortality tables was involved, the Supreme Court used this significant language: "If we assume that the tables establish a *prima facie* case of respondent's expectation of life, the appellant clearly had the right to overcome that *prima facie* case by showing facts which lessened that expectation."

■ The term "life expectancy" as used in the instruction here given was sufficiently accurate to express that which the tables of mortality showed (*Belmer* v. *Boyne City Tanning Co.,* 160 Mich. 669 [125 N. W. 726]), and consequently the jury was informed in effect that if Mrs. Murphy was permanently injured, her life expectancy as shown by said tables was eighteen years; but of course, in the form the instruction was given, it cannot be approved, because it was still a question of fact for the jury to determine whether on account of those injuries she was removed from the general classification established by said tables. ■ However, it does not follow for several reasons that a reversal is warranted on that ground, for in the first place it is held generally that in the absence of a request for more specific instructions it is not reversible error for the court to instruct the jury that life tables might be considered as evidence of the life expectancy of a person, without instructing further

that it should take into account in this respect all the evidence relating to the health and physical condition of such person (*Cubbage* v. *Estate of Youngerman,* 155 Iowa, 39 [134 N. W. 1074, 1078] ; *Grace* v. *Minneapolis & St. L. R. Co.,* 153 Iowa, 418 [133 N. W. 672] ; *City of Friend* v. *Ingersoll,* 39 Neb. 717 [58 N. W. 281] ; *Camden & A. R. Co.* v. *Williams,* 61 N. J. L. 646 [40 Atl. 634] ; *Belmer* v. *Boyne City Tanning Co., supra; Chicago Veneer Co.* v. *Jones,* 143 Ky. 21 [135 S. W. 430] ). To the same effect is *Smith* v. *City of Des Moines,* 197 Iowa, 440 [197 N. W. 307], citing numerous cases. And in the present case, no such request was made, nor was any instruction whatever proposed by defendants upon the subject.

Furthermore, it is a matter of common knowledge that the length of the life of a person cannot be definitely known (*People* v. *Burns,* 138 Cal. 159 [60 L. R. A. 270, 70 Pac. 1087] ) and of course is not subject to mathematical computation. Presumably the jury was composed of intelligent persons (*Ward Land etc. Co.* v. *Mapes,* 147 Cal. 747 [8 Pac. 426] ), and must have realized that this was true. Consequently it is not unreasonable to assume that they understood the instruction to mean, as the court doubtless intended, that if it believed that Mrs. Murphy was permanently injured, it was to take the eighteen-year period set forth in said tables as a basis in estimating her life expectancy. And in any event, since defendants were found liable for the accident, plaintiffs were admittedly entitled to damages for the personal injuries suffered by Mrs. Murphy; and the instruction in question concerns only that element thereof based upon her life expectancy. Therefore, since as stated it is impossible to determine such life expectancy with any degree of certainty, and defendants make no point that the amount of the award is so disproportionate to the injuries inflicted as to demand a reversal upon that ground, we are not prepared to hold that the error complained of calls for a new trial. (*Lahti* v. *McMenamin,* 204 Cal. 415 [268 Pac. 644] ; *Kirk* v. *Santa Barbara Ice Co.,* 157 Cal. 591 [108 Pac. 509].)

The court of its own motion instructed the jury also that under the evidence Mrs. Murphy was not guilty of contributory negligence; and defendants claim that in view of the conflict between the truck driver's testimony and that

given by the occupants of the coupe, as to the location of the truck immediately prior to the time the coupe entered the intersection, the question of whether Mrs. Murphy was guilty of contributory negligence should have been left to the jury to determine. We find no merit in the point. The evidence shows without dispute that Mrs. Howard was the owner and in control of the coupe and that Mrs. Murphy was riding merely as her guest and was in no degree responsible for the driving. She testified, as did Mrs. Howard, that the coupe stopped before entering the intersection and that they looked both ways on Lombard Street for a distance of approximately half a block, and saw no approaching vehicle; that the coupe then started across the intersection and upon reaching the center they looked again and saw the truck about 50 feet from the intersection; and that suddenly it bore down upon them and struck the coupe with the result above stated. Miss Legeal testified that when the coupe started across the intersection after making the stop she looked up Lombard Street and saw the truck, but it was then half a block or more away. The driver of the truck stated that he was right at the intersection when the coupe started to cross, and his statement in this regard was corroborated, more or less, by another witness. Basing their contention on the driver's testimony, defendants argue that Mrs. Murphy must have seen the truck at the point designated by the driver, or that she could have seen it if she had looked; and that if she did see it, or could have seen it had she looked, she was guilty of contributory negligence in not warning Mrs. Howard of its approach. We are unable to subscribe to such theory because Mrs. Murphy as a guest was not charged with the responsibility for observing the condition of the traffic upon the highway, nor was there anything she could have done after the danger was imminent to avoid a collision. (*Martinelli* v. *Poley,* 210 Cal. 450 [292 Pac. 451]; *Marchetti* v. *Southern Pac. Co.,* 204 Cal. 679 [269 Pac. 529].) The former case presented a somewhat similar situation and in holding that the guest was not guilty of contributory negligence the court said: "We find nothing in the evidence, either that admitted on behalf of the plaintiff, or that introduced by the defendants, that would tend to show that plaintiff was guilty of contributory negligence. He was simply riding with the appellant as a guest of the latter, and had no

power of control over the machine in which they were traveling. Nothing had happened during the trip, so far as the evidence shows, at least until the collision occurred, which indicated in any manner that the appellant was not driving his machine in a perfectly proper and careful manner. There was no reason for the plaintiff, therefore, to be apprehensive of his safety while riding with appellant or to take any unusual precautions against their running into danger. Just before the accident happened he was observing the houses along the highway and was not looking in front of the machine and therefore did not see Barlow's truck until it was about five feet from the car in which he was riding. It was then too late for him to caution appellant regarding the latter's driving, or to do anything else to avoid the collision. There is nothing in this conduct of the plaintiff which would tend in the least to prove that he was guilty of contributory negligence in causing the injury sustained by him as a result of the collision.'' In the latter case, in holding that the responsibility for observing danger does not rest upon the guest, the doctrine is stated substantially the same. There the court apparently goes further in saying that even when the danger of collision becomes suddenly imminent, the guest is not obliged to ''displace the driver, seize the operating levers and endeavor to avoid the impending catastrophe''. In the present case, therefore, we conclude that even in view of the conflict above pointed out there is no ground upon which Mrs. Murphy could have been held guilty of contributory negligence. The objection made to the words ''proximately contributed'' as used in two other instructions is not well taken and is not of sufficient importance to require discussion.

█ The remaining instructions about which defendants complain relate to the right of way at intersections. In this regard section 131a of the California Vehicle Act, in force at the time of the accident, read as follows: ''When two vehicles approach an intersection of public highways at approximately the same time, the vehicle approaching from the right shall have the right of way, provided such vehicle is traveling at a lawful speed.'' In the first of the instructions criticised the jury was told that if it found that the coupe reached the intersection before the truck, the two vehicles did not approach the intersection at approximately

the same time, but that the coupe was first to reach the same; and that if the jury further found that the coupe was proceeding at a lawful rate of speed it had the right of way over the truck and that the truck driver should have yielded the same to the coupe, or failing to do so he was guilty of negligence. ▮ In the second instruction the jury was informed that if they found that the coupe entered the intersection before the truck "and was entitled to the right of way upon such intersection" it was the duty of the truck driver to yield the right of way to the coupe to the point of stopping the truck if necessary, and that it was his duty to avoid collision with the coupe.

We are of the opinion that both instructions correctly stated the law. ▮ Defendants argue that according to the truck driver's testimony the circumstances under which the coupe was driven were sufficient to justify the belief on his part as a prudent person that Mrs. Howard had yielded the right of way to him; and that such element, and the elements of ordinary care and proximate cause, should have been included in the above instructions. However, the instructions were not formula instructions, and for that reason it was not necessary to include therein all the theories of defendants' defense. Moreover, from an examination of the record it would appear that the elements mentioned were sufficiently covered in other portions of the court's charge.

▮ The final point, that the jury was prejudiced by an unfair cross-examination of one of defendants' witnesses, is also without merit. The point is based upon the fact that counsel for plaintiffs sought to impeach said witness by showing that she had previously made a number of extrajudicial statements contradictory to the testimony she was then giving, concerning what she saw and heard at the time the accident happened; and after laying the foundation for the impeachment by calling the attention of the witness to the time when, the place where, and the person before whom said statements were made, he did not produce the impeachment testimony. But there is nothing in the record to indicate that the questions were not asked in good faith, and evidently counsel believed that it was unnecessary to produce further testimony because as he thought the witness had been sufficiently impeached by the production, afterward, of a written state·

ment previously signed by her which contained statements inconsistent with the testimony she had given.

In our opinion no prejudicial error has been shown. The judgment is therefore affirmed.

A petition for a rehearing of this cause was denied by the District Court of Appeal on June 27, 1931, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 27, 1931.