[Civ. No. 10244. First Appellate District, Division One.—August 30, 1937.]

AUGUST SKULTE, Respondent, v. JAMES B. AHERN, Appellant.

462

[REDACTED]

Redman, Alexander & Bacon and Herbert Chamberlin for Appellant.

Keyes & Erskine and Eugene J. Mooslin for Respondent.

GRAY, J., *pro tem.*—The complaint alleged that while respondent was walking at night southerly on the westerly side of Polk Street across North Point Street in San Francisco, appellant so negligently operated his automobile westerly on North Point Street as to cause it to strike respondent, thereby inflicting upon him severe personal injuries for which he prayed general and special damages. The answer denied these allegations and affirmatively pleaded a defense of contributory negligence. After a trial, in which seven days were consumed in the presentation of evidence, the jury returned a verdict in favor of respondent for $22,500 and judgment was entered accordingly. His motion for a new trial having been denied, appellant appeals from the judgment, and in support thereof claims that the evidence does not establish his negligence but does establish respondent's contributory negligence as a matter of law; that the jury was misdirected to his prejudice, and that the verdict is excessive.

Appellant argues the evidence fails to establish his negligence because it shows that he drove his automobile on the right side of the street, at a moderate speed, under proper control, and with lighted headlights, and that he had the

right of way over respondent. Respondent replies that appellant supports his argument by quoting only such portions of the conflicting evidence as are favorable, and by ignoring other portions which fully sustain the jury's implied finding of negligence. If there is any evidence which sustains such finding, the jury's determination is final. (*Kleem* v. *Chapot*, 112 Cal. App. 553 [297 Pac. 574].)

■ Polk Street, running from north to south, has a width between property lines of 68 feet 9 inches, with sidewalks on each side 12 feet wide, and with its center occupied by a double set of street car tracks, terminating southerly of North Point Street. The latter, crossing the former, has the same width, with sidewalks on each side 10 feet wide and with its center to a width of 16 feet 2 inches occupied by a double set of street car tracks, which cross Polk Street. The northerly set of these tracks is located 26 feet south of the north property line of North Point Street. Appellant fixed the position of his automobile at the time of the collision as straddling the most northerly rail, with its left wheel 2 or 3 inches to its north. Respondent said that at that time such rail was between his feet, with his left foot nearly touching it and his right away over it. That respondent was struck by the left front headlight may be inferred from the fact that its lens was broken in the collision. Appellant admitted that he was not then preparing to overtake or pass another vehicle going in the same direction or to make a left-hand turn, and that the space between the rail and the curb was passable. It is clear, therefore, that he could have avoided the accident by veering his automobile but slightly to his right. Appellant argues that he was not negligent since he drove on his right half of the street, as required by subdivision (a) of section 122 of the California Vehicle Act. Respondent contends that he was negligent since he did not drive as closely as practicable to the right-hand curb, as further required by subdivision (b) of the same section. The court in its instructions to the jury read both subdivisions. Appellant claims that it erred in reading the second subdivision, and in support thereof cites the cases of *Arundel* v. *Turk*, 6 Cal. App. (2d) 162 [44 Pac. (2d) 383], and *Polk* v. *Weinstein*, 12 Cal. App. (2d) 360 [55 Pac. (2d) 588]. These cases hold that since subdivision (b) was enacted for the benefit of motorists traveling in the same direction, it did

not apply to vehicles moving in opposite directions. Here the pedestrian and the vehicle were in the same half of the street, which is the same situation which arises when two vehicles are traveling in the same direction. If, as appellant concedes, respondent was entitled to the benefits of subdivision (a), the same reasoning should give him the further protection of subdivision (b). Since the second, as well as the first, subdivision governed appellant's operation of his automobile, the court correctly read such subdivision to the jury and the latter was justified in finding him negligent for his violation of it.

In one part of his cross-examination appellant estimated his speed across the intersection at 15 or less miles per hour, and at the moment of impact at 20 or less miles per hour, and upon these estimates argues that his speed was moderate. However, these estimates were impeached by higher rates of speed which he gave in other parts of his testimony, and which he had given in his deposition. Other witnesses testified that the automobile carried respondent 40 feet before he fell off; that it thereafter ran an additional 40 feet before stopping, and that its tires made skidmarks 40 feet in length. The jury was not compelled to accept his lowest estimate, but was warranted in inferring from the physical facts that his speed was excessive. (*Linde* v. *Emmick,* 16 Cal. App. (2d) 676 [61 Pac. (2d) 338].) The intersection was illuminated by street lights, and its corners were occupied by buildings which obstructed his view of traffic moving on Polk Street. The court read to the jury subdivisions (a), (b) (2), and (d) of section 113 of the California Vehicle Act. Appellant asserts that subdivision (b) (2), specifying a speed of 15 miles per hour across an intersection with an obstructed view, should not have been read, because under his estimate of speed no issue as to its violation arose. This criticism ignores the conflicting evidence of speed pointed out above.

Nor does his further claim that he had his automobile under proper control seem well taken. He testified that his brakes were in good condition and could stop the automobile within 12 feet when going 20 miles per hour. He also stated that his headlights were lighted, and that their rays extended 100 feet in front of the automobile. He admitted that he first saw the respondent when he was but 3 or 4 feet

away. Since his view of objects in front was unobstructed, it was appellant's duty to have earlier seen the respondent. He was required to anticipate the presence of pedestrians in the crosswalk, and to keep such lookout and control of his machine as would enable him to avoid a collision. The evidence justifies the jury's conclusion that he did not discharge these duties and therefore was negligent in not keeping his automobile under such proper control as would have avoided the accident. (*Potter* v. *Driver*, 97 Cal. App. 311 [275 Pac. 526].)

At the trial appellant stated that his head and tail-lights were connected on the same circuit, which caused both to be on or off at the same time; that his lights were lit at the time of the accident and that he turned them off after he had parked at the curb before the arrival of a police officer. Previously the officer had testified that the lights were out when he arrived. Appellant's testimony that he turned off the lights before the officer's arrival is impeached by the statement in his deposition, before he corrected it, that the lights were then burning. He was corroborated by the statements of the motorman and conductor of a street car then standing on Polk Street that they saw the tail-light of the automobile burning as it traveled westerly of the intersection. He was contradicted by the respondent, who said the lights were not lit when he was struck. The latter admitted he saw the automobile travel only a few feet before he was hit. A painter swore that the automobile did not have lights, without specifying whether he was referring to the tail or headlights or both. The latter admitted that he had not seen either the pedestrian or the automobile before the collision, and that he did not know whether or not a street light in the vicinity was illuminated. Appellant argues that their admissions make their testimony incredible. Unless their testimony was inherently improbable, its credibility was a matter for the jury's determination, and unless it was contrary to the laws of nature it cannot be held inherently improbable. (*Hughes* v. *Quackenbush,* 1 Cal. App. (2d) 349 [37 Pac. (2d) 99].) Since it is common knowledge that the human eye can photograph an object with lightning-like rapidity, it cannot be said, as a matter of law, that the length of respondent's observation was too brief for him to have seen the headlights. Nor did the painter's failure to see

all objects within his vision render his observation of a portion incredible, for such is a common experience. (70 Cor. Jur. 87.)

Subdivision (a) of section 131½ of the California Vehicle Act required the driver of a vehicle to yield the right of way to a pedestrian crossing the roadway within a crosswalk, and subdivision (c) of the same section required a pedestrian crossing a roadway at any point other than within a crosswalk to yield the right of way to vehicles. A city ordinance provided that ''when within . . . a business district, no pedestrian shall cross a roadway other than by a crosswalk''. It was stipulated that the scene of the accident lay within a business district. Respondent's position with reference to the crosswalk at the moment of collision determines who had the right of way under section 131½, and whether he was contributorily negligent because of his violation of the ordinance. Respondent stated positively that he was then walking in the crosswalk. Appellant testified that he was 8 or 10 feet past the intersection when he first saw respondent; that he found respondent's body 15 feet west of the crosswalk, and that he must have struck him before that. Other witnesses testified that the body was lying about 40 feet west of the crosswalk with blood and broken glass from the headlights in the vicinity. Appellant argues that these physical facts corroborate his version and destroy respondent's testimony as incredible. But these physical facts are not so inconsistent with respondent's testimony as to stigmatize it as inherently improbable. (*Hosking* v. *Danforth,* 1 Cal. App. (2d) 178 [36 Pac. (2d) 427].) Indeed, other testimony above pointed out that respondent was carried 40 feet before he fell to the pavement readily accounts for the body, glass and blood 40 feet west of the crosswalk. The jury was authorized, under the conflicting testimony, to find that respondent had the right of way and had not violated the city ordinance.

The court instructed the jury that ''a public highway, *subject to the provisions of any statute or ordinance,* is open in all its length and breadth to the reasonable common and equal use of the people on foot or in vehicles'' and that ''a traveler on foot has the same use to the public highway as an automobile or other vehicle''. (Italics ours.) After amplifying these principles, it read subdivisions (a), (c)

and (e) of section 131½ of the California Vehicle Act and the above-mentioned city ordinance. Appellant correctly contends that the equal and common right of pedestrians and motorists to use any part of the highway, as stated in the quoted instruction, is curtailed by the restrictions stated in said section 131½ and in the city ordinance. He argues that the two portions of the instructions are contradictory, and since it is impossible to ascertain which the jury followed, that these quoted instructions are prejudicially erroneous. But the instructions must be read together. It is clear that the court, by the italicized portion of the quoted instruction, told the jury that the common law right of a pedestrian and a motorist therein stated was subject to the regulations of the ordinance and statute subsequently read.

 It is contended that the jury was prejudicially misdirected by the following instruction: ''You are instructed that in this case the *burden of proof* of negligence rests upon the plaintiff; that if the plaintiff makes a *prima facie* showing of negligence by defendant the *burden* is then thrown upon the defendant to disprove it.'' (Italics ours.) Of course, as appellant states, the burden of proof never shifts from the party maintaining the affirmative of an issue, but, as respondent says, the burden of producing evidence to meet his *prima facie* case does pass to his opponent. The instruction clearly distinguishes between these two different burdens for one alone is qualified by the addition of the phrase ''of proof''. The two clauses are not contradictory. The second clearly means that the burden of producing evidence to meet respondent's *prima facie* case rested upon appellant. The latter meets and therefore disproves the former's *prima facie* case when he balances it evenly without proving absence of negligence by a preponderance of the evidence. (*Smith* v. *Hollander*, 85 Cal. App. 535 [259 Pac. 958]; *Koyer* v. *Willmon*, 12 Cal. App. 87 [106 Pac. 599].) Any uncertainty as to its meaning was removed by other instructions, which, as appellant concedes, correctly and completely stated the rules as to the burden of proof and the preponderance of evidence.

 Appellant criticizes an instruction to the effect that a pedestrian has a right to assume that a motorist knows the law and will obey it, upon the ground that it omits the qualification that a pedestrian who is negligent cannot rely or act upon such assumption. He also complains of an in-

struction on the doctrine of sudden peril, for its omission of the qualification that a person who is negligent cannot claim its protection. The criticisms are without merit, since in both instances the qualifications were stated in subsequent instructions. ■ In one of fourteen exhaustive and voluminous instructions on contributory negligence the court said: "Contributory negligence is in its nature a plea of confession and avoidance. Contributory negligence in law is predicated upon the existence of negligence on the part of the defendant, the responsibility for which he avoids by showing concurrent and contributing negligence on the part of the person injured." Conceding that this instruction was erroneous, it does not appear, in view of the evidence and the other correct instructions, that it caused a miscarriage of justice. (*Harveld* v. *Milani*, 1 Cal. App. (2d) 157 [36 Pac. (2d) 393].)

■ The complaint alleged that respondent had been damaged in the sum of $20,000 by reason of his physical injuries; in the sum of $10,000 by reason of his inability to follow his trade of marine machinist; and in an unascertained amount for medical and hospital treatment. It prayed for $30,000 as general damages, and for the reasonable value of the medical and hospital treatment as special damages. An instruction stated that respondent sought to recover $30,000 as general damages for injuries and suffering and loss of earning power. Appellant argues that the lumping together of the amount claimed for injury with that claimed for loss of earning capacity removed any limitation on the amount which the jury could award for the latter. A similar argument was held untenable in *Johnson* v. *Pearson*, 100 Cal. App. 503 [280 Pac. 394], where it was said that a similar instruction was correct, and that if an appellant desired segregation he should have requested it. ■ Even if, as appellant argues, respondent's testimony as to actual earnings before the accident was utterly destroyed by impeachment, yet it does not follow that no award should have been made for loss of earning capacity since the latter is not necessarily dependent upon the actual receipt of wages. (*Marshall* v. *Smith*, 131 Cal. App. 258 [21 Pac. (2d) 117]; *Girard* v. *Irvine*, 97 Cal. App. 377 [275 Pac. 840].) ■ A calm recital of respondent's injuries refutes appellant's argument that the verdict of $22,500 was excessive. Included therein was the sum of $2,161.27 to cover expenditures for medical and hospital

treatment, and something for loss of earning capacity, since the permanent effect of his injuries incapacitated him from following his trade. He sustained a gaping wound on the right side of his head, fractures in his upper right arm at the elbow, in six ribs on his right side, in the fibula and tibia of the left leg and in the first lumbar vertebra, a tearing of the internal lateral ligaments of the left leg and right knee, and a concussion of the brain. He was in the hospital over two months, during which he endured severe suffering, particularly from paralyzed bowels and traction applied to his leg and arm. His injuries were permanent to the extent that three ribs had not united; that the right elbow was limited 20 degrees in the extension and 10 degrees in flection; that his left knee was unstable and disabled 25 to 50 per cent; that he did not have full use of his right hand; and that he still suffered headaches and dizziness.

The judgment is affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 29, 1937, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on October 29, 1937.