[Civ. No. 2285. Fourth Appellate District.—January 18, 1940.]

E. G. CHINNIS et al., Appellants, v. POMONA PUMP COMPANY (a Corporation) et al., Respondents.

634

Hugo McKinley and Joseph A. Brown for Appellants.

Brittan & Mack and Victor H. Parry for Respondents.

THOMPSON, J., *pro tem.*—This action arose out of a collision between an automobile and a truck at the intersection of two highways two miles south of Shafter in Kern County, on March 7, 1937. Plaintiff E. G. Chinnis was driving his automobile and riding with him in the car were his wife Verna Mae Chinnis, who died as a result of injuries sustained in the collision, their daughter Nellie Louise Chinnis, aged 10 years,

and their niece Mary Frances Hilderbrand, aged 5 years. The truck was driven in the course of his employment by defendant Minnick, an employee of defendant Diehl, who owned the truck. Six causes of action are contained in the amended complaint. The husband and daughter sought damages under Code of Civil Procedure, section 377, for the death of the wife and mother, respectively, and each minor sought to recover damages for her individual personal injuries. The defendant Pomona Pump Company was made a defendant on the theory that Diehl was its agent and servant. The case was tried by the court without a jury and judgment rendered in favor of each minor for $750 damages against defendants Diehl and Minnick, and in favor of defendant Pomona Pump Company. Recovery was denied to E. G. Chinnis individually on the ground that he was guilty of contributory negligence. The general demurrers of defendants F. R. Schwartz (sued as R. F. Schwortz), Ray S. Brown and Oscar Forsell to the amended complaint were sustained without leave to amend, and judgment was entered in favor of said defendants, from which no appeal has been taken.

█ The notice of appeal is attacked on the ground that it does not include an appeal by plaintiff Nellie Louise Chinnis from the judgment on her causes of action for damages on account of the death of her mother. The notice states in part that her appeal is "from the judgment . . . in favor of said plaintiffs Nellie Louise Chinnis and Mary Frances Hilderbrand, and in favor of the defendant Pomona Pump Company, and against C. M. Diehl and Loren Minnick". The Code of Civil Procedure provides that there may be an appeal from the judgment "or some specific part thereof" (Code Civ. Proc., sec. 940); and if the notice af appeal, in identifying some specific part of the judgment, excludes other parts, it must be interpreted to relate only to the part so identified. But here the judgment did not identify any particular causes of action and we think the language of the notice is sufficient to indicate that the appeal is from the whole judgment, including the portion which denied her damages for the loss of her mother. █ Notices of appeal are liberally construed. Technical objections to the presentation of appeals are not favored and, in the absence of a showing of prejudice to some right of the adverse parties, should not be sustained. No such prejudice is herein shown nor is any claimed. (*Estate of Smead,* 215

Cal. 439, 440 [10 Pac.·(2d) 462]; *Haydel* v. *Morton,* 3 Cal. App. (2d) 364, 365 [39 Pac. (2d) 454]; *Gullick* v. *Interstate Drilling Co.,* 111 Cal. App. 263, 265 [295 Pac. 549].)

Appellants contend that the finding that defendants Schwartz, Diehl and Minnick were not the agents or servants of the defendant Pomona Pump Company is contrary to the evidence. So far as this finding relates to defendant Schwartz it is contrary to the evidence, as the uncontradicted testimony of Schwartz and Diehl was to the effect that Schwartz was the district manager of the Pomona Pump Company. Was there evidence or proper inference to support this finding as to the defendants Diehl and Minnick? The general rule is that, if one has the right to select and control another to perform a service and direct his method or mode of doing the service, it⌐is the relationship of master and servant. But, if he has no right to direct the method of accomplishing the result by the other, then the other is an independent contractor. (*Stewart* v. *California Imp. Co.,* 131 Cal. 125, 131 [63 Pac. 177, 52 L. R. A. 205]; *Barton* v. *Studebaker Corp.,* 46 Cal. App. 707, 715 [189 Pac. 1025].) The evidence as to the relationship between the Pomona Pump Company and Diehl is quite voluminous, but the following is a brief synopsis thereof. There was evidence to the effect that Diehl was the owner of the truck involved in the accident and Minnick was employed by Diehl and was driving the truck at the time. The Pomona Pump Company maintains a district office in Bakersfield. Diehl maintained his place of business at his residence in a different part of Bakersfield, and had his telephone there in his own name. He maintained this place and the telephone at his own expense. Diehl worked as a pump repair man for anybody who would employ him. Diehl had an oral arrangement with the Pomona Pump Company which could be terminated on thirty days' notice by either party, whereby Diehl got the work of installing pumps sold by the Pomona Pump Company in that vicinity, except where the purchasers did their own installation. Diehl received a fixed amount for each installation job from the Pomona Pump Company. Diehl also had an oral arrangement whereby he received a commission from the Pomona Pump Company if he sold a pump for that corporation. He also received a commission sometimes when Schwartz (district manager for said corpora-

tion) sold a pump to a customer to whom Diehl had previously sold a pump; and sometimes if Diehl gave Schwartz a prospect to whom Schwartz sold a pump the corporation paid Diehl a commission. On some such deals the pump company paid no commission to Diehl. On work which the pump company agreed to do for a pump owner to increase the efficiency of the pump and bring it up to the guarantee, they engaged Diehl to do that work and the pump company paid him for it. But Diehl did repair work for the owners directly on pumps sold by the Pomona Pump Company and on such jobs the pump company paid him nothing and exercised no control over his work. He purchased the materials from the pump company, being allowed a discount. Diehl charged the customer directly for such materials and for his labor. He employed helpers who worked with him, and Diehl paid them himself. Diehl furnished his own truck and paid all expenses of its operation. No one from the pump company told him when to work or quit, or how to perform any particular job. Of course, if his work for the pump company was not satisfactory to the company, it could terminate the oral arrangement. All of Diehl's jobs were carried out with his own helpers on his own time and with his own equipment. On his bill-heads he had Schwartz's name as salesman and Schwartz's address, and also "C. M. Diehl, Deep Well Turbine Pumps Dealer, Installing and Repairing". He did not have the name of Pomona Pump Company on any of his stationery. In the telephone book, under the name "Pomona Pump Company", said company had its own telephone number and under it a notice that, if there was no answer, to call a number which was Diehl's number. Diehl called at the Pomona Pump Company's office frequently about pump parts and while there occasionally answered the phone and took messages. He received no pay for this. Diehl and Schwartz each helped the other by suggesting prospects. A few days before the accident the California manager for the Pomona Pump Company sent out a circular letter to owners of Pomona pumps generally, advertising improved bowls for Pomona pumps and advising their installation. A Mr. Cokely, who owned a Pomona pump near Shafter and who had received one of the circular letters, called on the telephone the number designated for the Pomona Pump Company in Bakersfield. There was no answer so he called the other number designated and got

Diehl, who went out and made an agreement with Cokely to repair his pumping plant. This was not a job guaranteed by the company. He purchased some parts from the company at a discount and passed some of the discount on to Cokely. The Pomona Pump Company charged Diehl for the parts and Diehl paid the company. Diehl charged Cokely for the parts and labor and Cokely paid Diehl. Defendant Minnick, with two other employees of Diehl, was working on the Cokely job and on the day of the accident they were returning from the job in Diehl's truck, which Minnick was driving. The trial court found that Diehl and Minnick were not agents or servants of Pomona Pump Company. Section 2009 of the Civil Code (now sec. 3000 of the Labor Code) describes a servant as follows: "A servant is one who is employed to render personal service to his employer, otherwise than in the pursuit of an independent calling, and who in such service remains entirely under the control and direction of the latter, who is called his master." After reviewing the evidence in the present case disclosing the nature of the relationship between the Pomona Pump Company and Diehl, it is apparent that the relation of master and servant, as defined by the code, did not exist between the Pomona Pump Company and Diehl at the time of the accident and, consequently, it did not exist between the company and Minnick, the driver of the truck, who was employed by Diehl. Under the evidence presented, Diehl was an independent contractor and Minnick was his employee, and the pump company had no authoritative control over them as to the manner in which the details of their work were to be performed, as distinguished from mere suggestion and advice as to details. The control necessary to make the relationship that of master and servant means complete control or the unqualified right to control and direct the details of the work or the means by which the work is to be accomplished. (*Barton* v. *Studebaker Corp., supra*, and cases therein cited; *Counihan* v. *Lufstufka Bros. & Co.*, 118 Cal. App. 602, 604, 605 [5 Pac. (2d) 694], and cases therein cited; *Thompson* v. *Robinson-Roberts Co.*, 13 Cal. App. (2d) 166, 168 [56 Pac. (2d) 599].) The finding of the trial court that Diehl and Minnick were not the agents of the Pomona Pump Company has ample support in the evidence and must be sustained and the judgment based thereon, in favor of said defendant and against all plaintiffs, affirmed.

■ Appellants next contend that the evidence does not support the finding of the trial court that plaintiff E. G. Chinnis, the driver of the automobile, was guilty of contributory negligence. There is but little conflict in the evidence. In substance it discloses that Chinnis was driving southerly on Shafter highway, an oiled road, and the truck was traveling easterly on Burbank Road, a dirt road. The intersection was unobstructed and Chinnis could see westerly on Burbank Road a quarter of a mile. As he approached the intersection and was about 300 yards from it, he saw a cloud of dust on Burbank Road about 400 or 500 yards west of the intersection. He just glanced at it, but did not realize what caused it. He did not notice it again but looked straight ahead. The sun was shining in his eyes some, not badly, but it bothered him. He did not slow down for the intersection. He knew there was an intersection there, but he was "just looking ahead". He said he was traveling 25 to 30 miles per hour. One witness testified Chinnis was traveling 40 to 45 miles per hour as he approached the intersection and he did not slow down. The vehicles entered the intersection at "a dead heat". Another witness fixed the speed of the plaintiff's car at 30 to 35 miles as it entered the intersection and the speed of the truck at 45 to 50 miles per hour about 150 to 200 yards west of the intersection. It was the duty of the plaintiff E. G. Chinnis to keep a careful lookout for approaching cars and to use ordinary care to avoid colliding with any such car. It is apparent that he did not do so and the court was justified, under all the circumstances of the case as shown by the evidence, in finding him guilty of contributory negligence.

■ Appellants urge that the court erred in denying Nellie Louise Chinnis a judgment for the death of her mother. Counsel for plaintiffs suggest that judgment was denied under Code of Civil Procedure, section 377, upon the theory that the contributory negligence of her father was imputed to her. The record does not indicate such reason for the judgment, but, of course, the father's negligence could not be imputed to this minor child. (*Bowen* v. *Kizirian,* 105 Cal. App. 286, 288 [287 Pac. 570] ; *Bowler* v. *Roos,* 213 Cal. 484, 485 [2 Pac. (2d) 817].) Counsel for respondent corporation, however, contend that this part of the judgment is based upon a finding that the decedent herself was guilty of contributory negli-

gence and, therefore, the minor child cannot recover for the death of her mother. If such a finding has support in the evidence the minor cannot recover for such damage because the negligence of the decedent bars her heirs from recovery in an action for wrongful death. (8 Cal. Jur., p. 988 et seq., and cases cited.) The court did not make a finding specifically stating that decedent was guilty of contributory negligence. However, in paragraph IX of the first cause of action in the amended complaint, plaintiffs E. G. Chinnis and Nellie Louise Chinnis allege that ''Verna Mae Chinnis (decedent) received serious injuries through no fault of her own nor due to any negligence on her part . . . '' All of the defendants deny this allegation and all defendants affirmatively allege contributory negligence on the part of the decedent. The court made a finding ''that it is true that Verna Mae Chinnis received injuries and died . . . as a result of said injuries; that the other allegations to paragraph IX of the first cause of action of said amended complaint are untrue''. This is equivalent to a finding that her negligence proximately contributed to her death and, under the rule governing appellate courts, a judgment based upon this finding cannot be disturbed if there is any evidence in the record supporting the finding, or if conflicting inferences could reasonably be drawn from the evidence. But what does the record disclose? There is no evidence whatever on the question except that she sat in the front seat of her husband's car just prior to and at the time of the accident. Respondents' counsel argue that there was nothing to prevent her from seeing the approaching truck and it must, therefore, be presumed that she did see it, and they cite the case of *Hoffart* v. *Southern Pac. Co.*, 33 Cal. App. (2d) 591 [92 Pac. (2d) 436] (June 30 '39) to uphold this contention. However, that case lends no support to such contention and can easily be distinguished on the facts, for the evidence in that case described in detail and without conflict the conduct of the decedent, who was a passenger in the automobile, prior to and at the time of the accident. ■
A guest who has no control, supervision or management over the automobile is not placed in the same legal situation as the driver. (*Scherer* v. *Southern Pac. Co.*, 140 Cal. App. 528, 534 [35 Pac. (2d) 356]; *Marchetti* v. *Southern Pac. Co.*, 204 Cal. 679, 682 [269 Pac. 529]; 3 Cal. Jur., pp. 853 and 854.) If we assume that the decedent saw or should have seen the

approaching truck, we cannot necessarily assume that she was aware of impending danger. The truck was not a menace until it was close to the intersection. There is no evidence to indicate whether or not she remonstrated with her husband, or requested him to slow down, or warned him of impending danger, or took any other precautions for her own safety. The burden is upon the defendants who charge contributory negligence to prove it by a preponderance of the evidence, where it is not shown by, or may not be inferred from, the evidence of plaintiffs. There is nothing in the proof to show that decedent did not reasonably believe her husband would slow down or take other precautions to avoid the danger. In view of the absence of proof on the issue, plaintiffs may rely upon the presumption that decedent did take ordinary care for her own safety, which is a species of evidence. (Code Civ. Proc., sec. 1963, subd. 4; *Crabbe* v. *Mammoth Channel G. Min. Co.,* 168 Cal. 500, 506 [143 Pac. 714].) The evidence in this case does not support the finding that decedent was guilty of contributory negligence, and the judgment must be reversed. (*McKinley* v. *Dalton,* 128 Cal. App. 298, 305 [17 Pac. (2d) 160].)

 Another ground for a new trial urged by appellants is that the damages awarded for personal injuries to each of the two minors were inadequate. The only evidence relating to the injuries to the minor children was that of the attending physician and surgeon, who described the injuries, their nature and duration, and the treatment therefor. From this evidence it appears that the injuries sustained by Nellie Louise Chinnis were as follows: a fracture of the zycoma (cheek bone) on the right side of her face, with about one-fourth of an inch displacement of the fragments, this being a permanent injury, resulting in ''a little displacement in the appearance of the face''; a fracture of the skull and concussion of the brain, the fracture being of the right parietal bone (''large bone covering side of head'') a simple fracture (no fragments), with very little damage to the brain; a fracture of the ilium (hip bone) extending about three and one-half inches; a fracture of the eleventh right rib; a puncture wound on the nose; some minor internal injuries and multiple contusions. She was in bed in the hospital twenty days and then confined in bed at home for a while and received medical treatment for about five months.

The injuries sustained by Mary Frances Hilderbrand are as follows: a fracture of the right clavicle (collar bone); a fracture of the left fibre of the thigh bone; a fracture of the left femur (thigh bone), requiring treatment by adhesive strapping with weight attached for three or four weeks and requiring two casts on her body; a fracture of the right main humerus (bone in upper arm); and an incomplete fracture of the scapula (shoulder blade). She was in the hospital about five months and had subsequent medical treatment. Her permanent and incurable injuries consist of a slightly inward bowing of the left leg (knock-kneed) and a deformity of the left foot partly due to this inward bowing of the leg, which will make it difficult for her to wear a shoe on that foot.

We are of the opinion that the amount of damages $750 awarded to each child is inadequate to justly compensate her for the injuries sustained. With respect to appellant Nellie Louise Chinnis, we think the issues of negligence and damage are so inextricably interwoven that a new trial should be had on all the issues. As to appellant Mary Frances Hilderbrand, we think the issues are severable and a new trial should be granted as to the issue of damages alone. (*Tumelty* v. *Peerless Stages*, 96 Cal. App. 530, 531 [274 Pac. 430].)

The trial court excluded certain evidence relating to the practice and course of dealings between the district manager of the Pomona Pump Company and defendant Diehl, offered for the purpose of proving agency between said corporation and Diehl. Although some of the questions asked of the witness were too general, most of this evidence was admissible for the purpose for which it was offered. However, that subject was thoroughly explored by plaintiffs' counsel by means of evidence which was admitted and no prejudice was suffered by appellants.

The judgment is affirmed as to the defendant Pomona Pump Company and as to plaintiff E. G. Chinnis. As to plaintiff Mary Frances Hilderbrand the judgment is reversed and the cause is remanded for a new trial on the single issue of the amount of damages; and the trial court is directed to render judgment in her favor for the amount of damages which shall be so found upon a determination of that issue. As to plaintiff Nellie Louise Chinnis the judgment is reversed and the cause is remanded for a new trial on all the issues.

Barnard, P. J., and Marks, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 6, 1940, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 18, 1940. Carter, J., voted for a hearing.