[Civ. No. 16426. Second Dist., Div. Two. Dec. 29, 1948.]

MARGARET M. MARTINDALE et al., Appellants, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY et al., Respondents.

[Civ. No. 16427. Second Dist., Div. Two. Dec. 29, 1948.]

FRANCIS THOMAS RICKETTE, Appellant, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY et al., Respondents.

[Civ. No. 16428. Second Dist., Div. Two. Dec. 29, 1948.]

JENNIE SIMPSON et al., Appellants, v. THE ATCHISON, TOPEKA & SANTA FE RAILWAY COMPANY et al., Respondents.

Max Fink, Jerry Rolston, Cyrus Levinthal and Leon E. Kent for Appellants.

Robert W. Walker, Gerald Brown, J. H. Cummins and Frederic A. Jacobus for Respondents.

WILSON, J.—Two actions for wrongful death and one for personal injuries arising from the same accident were consolidated and tried together to a jury. Verdicts were rendered in favor of defendants in each case. From the judgments following the verdicts plaintiffs have appealed.

The accident occurred shortly after 3 o'clock in the morning of June 19, 1945, where a single track railroad operated by defendant railroad company extends easterly and westerly across South Figueroa Street, a northerly and southerly thoroughfare of the city of Los Angeles. The train, with defendant Smith as engineer, was moving westerly across the intersection and an automobile driven by deceased Clarence Lee Martindale, traveling in a northerly direction, collided with the train. He had as passengers in the automobile James Paul Simpson, riding in the front seat with him, and Francis Thomas Rickette, in the back seat. Martindale and Simpson were killed and their respective heirs brought the above entitled actions for wrongful death. Rickette sued to recover for his personal injuries resulting from the accident.

Each complaint alleged that defendants were operating the railroad train in a "careless, reckless and negligent manner." The answers filed by defendants denied the allegation

and in the Martindale action pleaded contributory negligence on the part of decedent, who was driving the car. In their answers in the Simpson and Rickette cases contributory negligence was likewise alleged, together with allegations that the collision and consequent respective death of Simpson and injuries to Rickette were solely and proximately caused by the negligence of Martindale.

Figueroa Street is a four lane, paved highway 49 feet wide. The train consisted of a locomotive, tender and 75 cars moving west across the street at a speed variously estimated from 25 to 40 miles an hour. The automobile struck the 28th car, counting from the locomotive. Figueroa Street is practically straight and level and has a black top surface. The railroad is a single track, flush with the pavement. There is a dirt embankment on the southerly side of the railroad on each side of Figueroa Street about 4 feet high. On each side of the street there are many oil wells making the usual noise produced by the pumping equipment on such wells. There were no lights at the intersection, no flasher signal, wigwag, bell or gate.

The warnings for the crossing consisted of the following: (1) Two standard railroad crossarms with black letters "Railroad Crossing" on a white background; reflector buttons were set in the letters which reflected the diffused rays of automobile headlights. One of such crossarms was placed on each side of the railroad at the edge of the right of way and on the right-hand side of the dirt shoulder of the street pavement; there was no place on the traveled portion of the street where the driver of an automobile could not see the crossarms. (2) A round reflectorized disc about 18 inches in diameter, with the letters "RR" placed 9 feet east of the paved portion of the street and 467 feet south of the railroad crossing. (3) A large white sign painted on the pavement, commencing 312 feet south of the crossing and extending to a point 362 feet south thereof, containing two horizontal lines, each 20 inches wide; between the broad white lines there was a cross consisting of white lines 10 inches wide with an "R" in the east and west portions respectively of the cross. This sign was described by the only witness who looked at it as being in fair condition. (4) Two white lines painted on the pavement 6 feet on either side of the railroad track, each of which extended to the center line of the street in their respective lanes of traffic.

The engineer blew the whistle for the crossing and had the engine bell on the automatic ringer at the time of crossing the street. There was a bright headlight on the front of the engine and several other lights on the engine and tender and on the caboose. Skid marks made by the automobile extended south from the railroad track a distance of 50 feet. On the left there was a heavy skid mark 16 feet in length and a lighter mark of 34 feet; on the right-hand side the heavy skid mark was 24 feet long and the lighter one 26 feet in length. There was a gouge mark on the pavement midway between the skid marks which extended from a point south of the south rail of the railroad track to within 1 foot 9 inches of the north rail. The width between the rails is 4 feet 8½ inches and the overhang of the railroad car that was struck by the automobile was 2 feet 5 inches; thus the gouge mark extended at least 5 feet 4 inches north of the south side of the railroad car. This was a gondola car 54 feet 2 inches long, 8 feet 9 inches high and 9 feet 6 inches wide. The measurement from the top of the rail, which was flush with the pavement, to the bottom of the side sills underneath the car was 2 feet 9 inches. The sills are parallel to the longitudinal axis of the car and form the framework or chassis of the car. The center sill is located at the center and below the floor of the car, and the side sills, one on each side, are at the lower outside corners of the sides of the car. Underneath the car are two sets of trucks having four wheels each, brake rods and brackets, and an air brake reservoir, all of which fill much of the open space between the sills and the tops of the rails.

Damage to the railroad car consisted of marks on the south side of the car approximately 10 feet from its front end on the steel side sill and the center sill. The large wooden intermediate sill on the left or south side which extends between the center sill and the side sill was broken, and the top brake rod bracket was bent. The automobile was completely wrecked.

The heights of the six cars immediately in front of the car which was struck ranged from 3 feet 5 inches to 8 feet 8 inches, and the distances from the top of the rail to the bottoms of the cars were from 1 foot 2 inches to 2 feet 8 inches. The cars varied in length from 45 feet 7 inches to 57 feet 9 inches. Numbers and letters were painted in white on the sides of all cars of the train.

At the time of the accident the night was clear but dark, there being no moon.

The three men involved in the accident were employees in a shipyard at Los Angeles Harbor. Their work ceased at 3 o'clock in the morning and they all started toward Los Angeles in Martindale's car. Simpson had ridden with Martindale to and from work for some time previously, and for a week the three men had ridden to and from their work together, traveling over Figueroa Street and the railroad crossing. Previously Rickette had driven his automobile on the Figueroa Street to and from his work.

Martindale and Simpson were killed and Rickette had no recollection of the accident and knew nothing until he awakened in the hospital. There were no eyewitnesses to the accident. A sailor who was about 350 feet north of the railroad track and walking southerly saw the engine cross the intersection and saw the lights of Martindale's automobile approaching on the opposite side of the train; they suddenly went out and the witness did not know what had happened until he was crossing the railroad track and heard someone screaming and almost stepped on the body of one of the men.

The first assignment of error is the giving of instructions to the jury submitting to them the issue of contributory negligence of Simpson and Rickette. It is contended that there is no evidence upon which to premise a finding of contributory negligence on their part.

Since there is no direct evidence of the accident and what preceded it, the decision of the jury rests on inferences to be drawn from the conditions found after the collision. There was evidence from which inferences of contributory negligence could be drawn, hence it was the duty of the court to submit that issue under proper instructions. The fact that after skidding a distance of 50 feet the automobile made a gouge mark in the pavement 5 feet 4 inches in length extending from the south edge of the railroad car breaking a large wooden sill, making marks on the steel side sill, bending the brake rod bracket and passing almost entirely under the railroad car indicates that the automobile was traveling at a high rate of speed. A police officer trained for 20 years in traffic investigation and in the subject of physical laws relating to the operation of motor vehicles testified that under ordinary conditions of visibility the occupants of an automobile with headlights on high beam can see an object 350 feet ahead; that under the circumstances existing at the

time and place of the collision Martindale could have stopped his car within 350 feet if it had been traveling at the rate of 74 miles per hour or less, and that he could have stopped in 205 feet if he had been traveling 55 miles per hour or less. Such figures, said the witness, assume that the driver was capable of reacting to a warning to stop, either from one of his passengers or from his own view of an object ahead, as quickly as the average person,—three-fourths of a second being the average reaction time. The witness testified that the figures relating to speed and distance above mentioned were not theoretical but were the result of actual driving tests.

Based on the physical facts surrounding the accident, the damage to the railroad car and to the automobile, and the officer's testimony, the jury was justified in inferring that the automobile was traveling at an excessive rate of speed and that the driver was guilty of negligence. Plaintiffs rely on *Chinnis* v. *Pomona Pump Co.*, 36 Cal.App.2d 633 [98 P.2d 560], in which the court said the only evidence on the question of contributory negligence of the person killed in the accident was that she sat on the front seat of the automobile with the driver just prior to and at the time of the accident. This case is obviously not in point in view of the evidence above outlined and the inferences to be drawn therefrom.

The debatable question is whether the court erred in submitting to the jury the issue of contributory negligence of Rickette and Simpson. Each case must be judged and decided on the facts shown by the evidence and the inferences to be drawn therefrom. Ordinarily the question of contributory negligence of a guest or a passenger in an automobile as well as that of the driver is one for the determination of the jury. When a guest fails to do that which an ordinarily careful person would have done under the same or similar circumstances he cannot recover damages for his injuries, and whether the guest so situated has exercised such care is a question of fact for the jury. (*Tice* v. *Pacific Electric Ry. Co.*, 36 Cal.App.2d 66, 71 [96 P.2d 1022, 97 P.2d 844]; *Meyers* v. *Southern Pacific Co.*, 63 Cal.App. 164, 168 [218 P. 284] and cases cited; *Parker* v. *Southern Pacific Co.*, 204 Cal. 609, 615 [269 P. 622].) While a passenger who has no control over the automobile or the driver is not held to the same rule as to contributory negligence as the driver and it is not demanded of the passenger that he exercise the same high degree of observation as is required of the driver (see *Hoffart* v. *Southern Pacific Co.*, 33 Cal.App.2d 591, 596

[92 P.2d 436] ; *Switzler* v. *Atchison etc. Co.*, 104 Cal.App. 138, 144 [285 P. 918]), nevertheless he is normally bound to protest against actual negligence or recklessness of the driver, the extent of his duty in this regard depending upon the particular circumstances of each case, and it is a question for the jury. (*Wagner* v. *Atchison etc. Co.*, 210 Cal. 526, 528 [292 P. 645].) ▮ It is presumed that a person possessing normal faculties of sight and hearing must have seen and heard that which was within the range of his sight and hearing. (*Young* v. *Southern Pacific Co.*, 189 Cal. 746, 754 [210 P. 259] ; *Cate* v. *Fresno Traction Co.*, 213 Cal. 190, 195-6 [2 P.2d 364].) ▮ Therefore it was a question for the jury to determine whether the passengers in Martindale's car should have heard or seen the train. It is undisputed that the headlight on the locomotive was burning and the bell was ringing. The embankment described in the evidence was only 4 feet high and the headlight was visible for a considerable distance before the locomotive passed over Figueroa Street, consequently it was an object that could have been seen through the exercise of normal observation. The evidence as to the dimensions of the cars in front of the damaged car shows that they were much higher than the embankment and their tops were visible. The only reason advanced for the persons in the automobile not having heard the train or the bell is that the pump on some oil wells in the neighborhood made a noise, but the extent of the noise is not shown by the record.

▮ Whether or not a passenger or guest in an automobile exercised ordinary care upon approaching railroad tracks is a question for the jury to determine under proper instructions from the court. (*Wyseur* v. *Davis,* 58 Cal.App. 598, 602 [209 P. 213] ; *Scherer* v. *Southern Pacific Co.*, 140 Cal. App. 528, 535 [35 P.2d 356] ; *Southern Pacific Co.* v. *Kauffman,* 50 F.2d 159, 166.) The cases relied on by plaintiffs are distinguishable from the instant case. For example, in *Chinnis* v. *Pomona Pump Co.*, 36 Cal.App.2d 633 [98 P.2d 560], and *Murphy* v. *National Ice Cream Co.*, 114 Cal.App. 482 [300 P. 91], the evidence showed that the passenger was suddenly and without previous warning faced with danger and had no opportunity to warn the driver. In *Strandt* v. *Cannon,* 29 Cal.App.2d 509 [85 P.2d 160], nothing had happened during the trip to indicate that the driver was not operating the car in a proper and careful manner. In *Crawford* v. *Rose,* 2 Cal. App.2d 734 [39 P.2d 217, 40 P.2d 277], the guest was riding in the ''rumble seat'' behind the driver on a cold, foggy

night and had covered herself with a blanket so that at no time prior to the accident was she able to observe the impending danger. In *Conroy* v. *Perez*, 64 Cal.App.2d 217 [148 P.2d 680], one of the errors was the giving of an instruction as to contributory negligence of a 2-year-old child, the court holding that it would be conclusively presumed that the child was incapable of foreseeing the peril to which he was exposed. In *Campagna* v. *Market Street Railway Co.*, 24 Cal.2d 304 [149 P.2d 281], and *Krupp* v. *Los Angeles Railway Corp.*, 57 Cal.App.2d 695 [135 P.2d 424], the judgments were reversed for the reason, among others, that the negligence of the driver had been imputed by the trial court to the guest.

Since it was the duty of the jury to determine whether or not Rickette and Simpson were guilty of contributory negligence, the court did not commit error in giving proper instructions on the subject.

■ For the same reasons the court did not err in refusing to give the following instruction requested by plaintiffs: "If you should find that the driver of the automobile involved in this accident was guilty of negligence, and if you should further find that the defendant Railway Company was also guilty of negligence which proximately contributed to the happening of this accident, then you must nevertheless return a verdict against the defendant railway company and in favor of the heirs of James Paul Simpson who was a passenger in said automobile at the time and place in question, and you must also return your verdict against the defendant railway company and in favor of Francis Thomas Rickette who was also a passenger in said automobile at the time and place of the accident."

■ Plaintiffs assign error in the refusal of the court to permit the introduction of evidence concerning prior collisions at the same crossing between automobiles and defendants' trains. At the commencement of the trial this subject was discussed between counsel and the court and the latter announced that plaintiffs would be entitled to introduce evidence of that character but under limitations; that proof should be made that such accidents took place under conditions similar to those existing at the time of the accident in question. When evidence of such prior accidents was offered objection was made by defendants' counsel; plaintiffs offered to prove that within approximately three years previous to the accident that resulted in the instant actions six accidents. had taken place at the same crossing, but did not offer any

evidence as to the similarity of conditions and circumstances between those accidents and the one now in question. The accidents, as stated in the offer of proof, were as follows: In February, 1942, at 4:30 a. m.; in October, 1942, at 5:30 p. m.; in November, 1943, at 8:10 p. m.; in June, 1944, at 5 p. m.; in November, 1944, at 4:30 p. m.; and in February, 1945, at 9:02 a. m., the two latter having occurred during a rain. Two of the collisions included in the offer of proof occurred during the nighttime but the offer did not include any statement as to whether the night was light or dark or as to any other conditions existing; two of the accidents occurred in the daytime, and no circumstances concerning them were stated by counsel; two occurred in the daytime when it was raining. Manifestly an accident occurring on a dark night is not to be compared with one happening on a moonlight night or at sundown or during the daytime. Notwithstanding the ruling of the court made at the beginning of the trial that evidence of previous accidents would not be received unless accompanied by proof that the circumstances and conditions were similar to those existing at the time of the accident here in question, plaintiffs did not choose to fulfill the requirement of the court; which is fully sustained by the decisions. Before evidence of prior accidents can be introduced it should be shown or an offer should be made to show that the conditions existing at the time of the respective accidents were similar. (*Sellars* v. *Southern Pacific Co.*, 33 Cal.App. 701, 709 [166 P. 599]; *George* v. *City of Los Angeles*, 51 Cal.App.2d 311, 315-16 [124 P.2d 872]; *Thompson* v. *Buffums' Inc.*, 17 Cal.App.2d 401, 404 [62 P.2d 171] and cases cited.) In the cases cited by plaintiffs the same rule is announced. In *Long* v. *John Breuner Co.*, 36 Cal.App. 630, 639 [172 P. 1132], the court said that where the previous accidents have occurred "under substantially the same general circumstances" of the accident in question the evidence thereof tends to disclose the cause of the latter and to bring home to the person maintaining the instrumentality knowledge of its dangerous condition. In *McCormick* v. *Great Western Power Co.*, 214 Cal. 658, 665 [8 P.2d 145, 81 A.L.R. 678], plaintiff sought to prove other accidents that had occurred under similar circumstances. In *People* v. *Lang Transportation Corp.*, 43 Cal.App.2d 134 [110 P.2d 464], evidence of prior accidents on a bridge was admitted to show the state knew the bridge was defective and the evidence was admitted for that purpose alone. In *Magnuson* v. *City of*

*Stockton,* 116 Cal.App. 532, 535 [3 P.2d 30], the court said that in order to admit evidence of previous accidents it is not necessary to show that they occurred under circumstances precisely the same as those characterizing the accident in question but it is sufficient that ''they are similar in their general character.'' In *Dyas* v. *Southern Pacific Co.,* 140 Cal. 296, 304 [73 P. 972], the evidence showed the conditions existing at the time of a prior accident were similar to those present at the time of the accident in question.

Plaintiffs offered in evidence letters from the Road Commissioner of Los Angeles County to the signal engineer of defendant railway company dated respectively March 12, 1942, and August 9, 1944, referring to recommendations of the Los Angeles County Traffic Committee that wigwag signals be installed at the point where the railroad crosses Figueroa Street, and reciting the opinion of the committee that conditions warranted the installation of such wigwag signals. The court rejected the offer and plaintiffs assign error. Much that has been said in this opinion in the discussion of the refusal of the trial court to admit evidence of prior accidents is applicable to this point. Plaintiff maintains that the letters should have been admitted for the reason that they constituted notice to the railway company of prior accidents, and the extent of defendants' knowledge thereof is a factor in determining the amount of care required in the use of a mechanical agency. The letters were properly rejected for the reason that they are hearsay and purport to recite the opinion of persons other than the writer of the letters that wigwag signals were necessary. They were not admissible for the purpose of showing defendants' knowledge of previous accidents since manifestly the railway company already had knowledge thereof and made no contention that it was not possessed of such knowledge. Cases such as *Treadwell* v. *Whittier,* 80 Cal. 574 [22 P. 266, 13 Am.St.Rep. 175, 5 L.R.A. 498], in which evidence was given that a skilled mechanic had cautioned the defendants that an elevator operated in their store was being operated in a careless manner, and *Diller* v. *Northern California Power Co.,* 162 Cal. 531 [123 P. 359, Ann.Cas. 1913D 908], where the defendant had been notified of a sagging power line, and cases involving notice of other like appliances, are not authority for the introduction of the letters in evidence. In such cases the evidence was admitted to show the owner's knowledge of the dangerous condition since they involved the careless operation of an elevator and the use of appliances

that had become defective and the owner did not necessarily have knowledge thereof until notified. In *Wilkerson* v. *City of El Monte,* 17 Cal.App.2d 615 [62 P.2d 790], an action by a passenger in an automobile for injuries received when the car struck a dip in the pavement, the court reversed a judgment in favor of plaintiff, one of the grounds being the admission of evidence as to other accidents and the testimony of witnesses stating their opinions that the condition was dangerous. The court said it was prejudicial to defendant to receive evidence of the results without evidence as to their cause.

 Plaintiffs assign error in the giving of the following instruction: "At the outset of this trial, each party was entitled to the presumptions of law that every person takes ordinary care of his own concerns and that he obeys the law. These presumptions are a form of *prima facie* evidence and will support findings in accordance therewith, in the absence of evidence to the contrary. When there is other evidence that conflicts with such a presumption, it is the jury's duty to weigh that evidence against the presumption (and any evidence that may support the presumption), to determine which, if either, preponderates. Such deliberations, of course, shall be related to, and in accordance with, my instructions on the burden of proof. The presumption of due care may be dispelled and disappear from the case by the proof of a fact or facts which are wholly irreconcilable with the presumption."

Plaintiffs state the instruction is "technically correct in the abstract" but contend that under the evidence it was erroneous as to Simpson and Rickette and to defendants.

 In an action for wrongful death plaintiffs are entitled to avail themselves of the presumption that every person takes ordinary care of his own concerns. (*Smellie* v. *Southern Pacific Co.,* 212 Cal. 540, 548 et seq. [299 P. 529].) It has been repeatedly held that such an instruction should not be given when the party to the action is living and all circumstances of the accident are proved, but it has also been repeatedly held that the giving of such an instruction is not of such a prejudicially erroneous character as to require a reversal of the judgment, even though witnesses are produced who testify as to the circumstances of the accident. (*Stroh* v. *Bauman,* 37 Cal.App.2d 241, 244-5 [99 P.2d 337]; *Tuttle* v. *Crawford,* 8 Cal.2d 126, 133 [63 P.2d 1128]; *Paulsen* v. *Mc-Duffie,* 4 Cal.2d 111, 119 [47 P.2d 709]; *Rogers* v. *Interstate Transit Co.,* 212 Cal. 36, 39 [297 P. 884].)

Plaintiffs contend that the court erred in giving the following instruction: "In law we recognize what is termed an unavoidable or inevitable accident. These terms do not mean literally that it was not possible for such an accident to be avoided. They simply denote an accident that occurred without having been proximately caused by negligence. Even if such an accident could have been avoided by the exercise of exceptional foresight, skill or caution, still, no one may be held liable for injuries resulting from it."

In *Stevenson* v. *Fleming*, 47 Cal.App.2d 225, 232 [117 P.2d 717], the court quotes from *Pearce* v. *Elbe,* 98 Cal.App. 101 [276 P. 389], in which it is held that when negligence is pleaded in general terms and the denial is in general terms such denial permits a defendant to rely upon the defense of unavoidable accident, and that the instruction could not be harmful to the plaintiff for the reason that he had the burden of proving that the collision was occasioned solely by the negligence of the defendant, which would exclude the defense of unavoidable accident. The cases relied on by plaintiffs do not sustain their contention. In *Hyman* v. *Market Street Railway Co.*, 41 Cal.App.2d 647 [107 P.2d 485], plaintiff's injuries were caused when one streetcar ran head on into another. Since there was no question as to plaintiff's negligence and she could be held in nowise at fault, such an instruction was not proper. In *Jaques* v. *Southern Pacific Co.,* 8 Cal.App.2d 738 [48 P.2d 63], where the evidence tended to prove the accident was not unavoidable, the refusal of the court to give an instruction upon the subject of unavoidable accident requested by the defendant was held not to be error.

Another alleged error complained of by plaintiffs is the giving of an instruction as follows: "You are instructed that a railroad company has the right to assume that a reasonably careful man driving at night in an automobile on a highway which he knows is crossed by a railroad will, in approaching such crossing, use such lights and adopt such rate of speed as to be able to stop his automobile in time to avoid hitting a railroad car occupying the crossing."

This instruction goes no further than to say that it will be assumed that a reasonably careful man will obey the law.

Employees of a railway company are not chargeable with knowledge that an automobile having headlights of sufficient power to enable the driver to avoid an obstruction is likely to crash into a moving train. (*Dunlap* v. *Pacific Elec. Ry.*, 12 Cal.App.2d 473, 476 [55 P.2d 894].) A duty

rests upon the driver of an automobile to use ordinary care to avoid colliding with visible objects in front of him and an especial duty of care rests upon him in approaching and crossing railroad tracks. (*Heintz* v. *Southern Pacific Co.*, 63 Cal.App.2d 699, 704 [147 P.2d 621].) ▮▮▮ The instruction did not, as argued by plaintiffs, charge Martindale, the driver of the automobile, with negligence or instruct the jury that regardless of the sufficiency of warnings, the mere presence of the train on the tracks was sufficient to exonerate the railroad company of negligence. Nor did it take the case from the jury and instruct or even intimate that they should return a verdict in favor of defendants. Furthermore, the court instructed the jury at the request of plaintiffs as follows: ''You are instructed that it was not negligence as a matter of law for Clarence D. Martindale to drive his automobile at such a speed that he was unable to stop within the range of his vision at the time of the accident in question. Whether such speed was negligence is a factual question to be determined by the jury in the light of all the circumstances of the case.'' The latter instruction left the question of Martindale's negligence entirely with the jury.

▮▮▮ Plaintiffs' next assignment of error is the giving of the following instruction: ''The law of this state requires an automobile such as the kind involved in this case to be equipped with multiple beam headlights, that is to say, high and low beams arranged so that the driver may select at will different distributions of light projected at different elevations. While on high beam the distribution of light shall be so aimed and of such intensity as to reveal persons and vehicles at a distance of at least 350 feet ahead.''

This instruction gave the jury the information to which they were entitled with reference to the headlamps of automobiles and the distribution of light therefrom as required by section 648 of the Vehicle Code. There is no evidence whether the lights of Martindale's car were on high or low beam but since the evidence shows that there was no other traffic on the highway the lights could have been on the high beam without violating the law and it was the duty of the jury to determine whether, in the exercise of ordinary care, the driver should have had the lights on high beam so as to reveal objects on the highway at a distance of at least 350 feet ahead. Contrary to plaintiffs' contention there is no intimation in the instruction that the law required the lights

to be on high beam or that the automobile should have had a light that would reveal objects 350 feet ahead.

Plaintiffs cite *Peri* v. *Los Angeles Junction Railway*, 22 Cal.2d 111 [137 P.2d 441], in support of their discussion of several of the court's instructions to the jury, erroneously stating in their brief that it "was a case involving an accident much like the one in the instant case, and under quite similar circumstances." The fact is that the only condition or circumstance in the Peri case that is in the remotest degree similar to the instant case is that the automobile collided with the side of a train which was moving along the railroad track at night. All the other conditions surrounding the accident were the diametrical opposites of those disclosed by the evidence in the instant case. In the Peri case the automobile was moving at about 15 miles an hour, there was a heavy fog, the field of visibility was limited to from 5 to 10 feet for dark objects and from 35 to 50 feet for lighted objects, rendering it impossible for the driver to see the warning signs (crossarm, disc and paint on the pavement), the driver was leaning over the steering wheel peering ahead as he approached the crossing; neither the locomotive whistle nor its bell was sounded. In the instant case, as we have noted, the automobile was traveling at a high rate of speed, there was no fog, the night was clear, though dark, there was nothing to prevent the driver and his passengers from seeing as far as the headlights shone, the railroad warning signs were visible, both the locomotive whistle and bell were sounded. In the Peri case the court held that the question of defendant's negligence was one of fact to be determined by the trier of facts and (p. 125) that the failure to sound the whistle or the bell was alone sufficient to support a finding of negligence. This condition is not present in the instant case.

Several hypothetical questions were propounded to the police traffic expert hereinbefore mentioned, to which plaintiffs objected and now contend that the overruling of their objections was error. He was asked questions with reference to the average reaction time of automobile drivers and if the driver had an average reaction time and observed a train 350 feet ahead of him, at what speed he would be traveling and still bring the car to a stop without hitting the train under specific circumstances of roadway and brakes. Plaintiffs' argument is that since there is no evidence that Martindale observed the train when he was 350 feet distant therefrom the hypothetical question was improper. The ques-

tions merely assumed that Martindale was a reasonably attentive driver, that he was exercising ordinary care in operating his automobile and in observing objects in front of him, that he was traveling at a lawful speed, and that in the exercise of ordinary care he would have had his lights on high beam, revealing the train at least 350 feet ahead of him. The questions did not assume any fact not in evidence. It was assumed that the railroad crossing sign could have been seen at a distance of 350 feet and that the 18-inch reflectorized disc was located 457 feet south of the crossing. The hypothetical questions called for answers on a subject on which expert testimony is admissible.

 Plaintiffs' final assignment of error is that the court erred in giving the following instruction: ''You are instructed that although as a matter of law the defendant railway company was not required by any order of the Railroad Commission to install and maintain at the crossing here in question any of the automatic signals designated and illustrated as Standards Nos. 3, 4, 5, 6, 7 and 8, as set forth in Exhibit 8 herein; and that defendant railroad company was not required by statutory or other legal provisions or orders to install or maintain or provide the following specific equipment or means of warning of the passage of a train of cars over the highway grade crossing involved herein, and although in this action you cannot find the defendants guilty of negligence solely because of the absence from the crossing of such equipment and means of warning of the passage of a train of cars across said highway, nevertheless, if from a consideration of all the facts and circumstances of this case you find from the evidence that at the time and place referred to in plaintiffs' complaint and in the evidence, an ordinarily prudent person would have furnished and maintained either an automatic system whereby a bell or other sounding device would have continued to sound and give warning so long as a moving train of cars occupied the grade crossing here in question; or flood lights or other means of illuminating the grade crossing here in question at night; or an automatic light signaling device to indicate and warn persons approaching such crossing upon the highway that the grade crossing in question was occupied by a moving train; or an automatic wigwag signaling device indicating occupancy of the grade crossing in question by a train; or reflectors or flares at the crossing in question to warn of the crossing of a train of cars

at said grade crossing; or having lights on the cars making up said train; or a drop gate across said highway; or by stationing a person with a lantern or other type of illuminating signal or with a flag, or either one or more thereof, to warn travellers on the highway of the crossing of any train of cars at said highway grade crossing; and if you further find that the defendant, Atchison, Topeka & Santa Fe Railway Company, a corporation, did not furnish and maintain either one or more of said means of warning of such presence of a passing train, and that by reason thereof the plaintiff, Francis Thomas Rickette, was injured and that Clarence Lee Martindale and James Paul Simpson were killed, then and in that event I instruct you that the defendant, Atchison, Topeka & Santa Fe Railway Company, was guilty of negligence. However, in this action such negligence is of no consequence unless it was the proximate cause of the injury or death of the parties hereinabove mentioned."

We find no ambiguity or impropriety in this instruction. The jury was clearly instructed that the defendants could not be found guilty of negligence solely because of the absence from the crossing of certain warning equipment yet it was left to the jury to determine whether an ordinarily prudent person would have furnished and maintained (a) an automatic system whereby a bell or other sounding device would have continued to sound as long as a moving train of cars occupied the crossing, or (b) floodlights or other means of illuminating the crossing, or (c) an automatic light signaling device. Since the jury was permitted to determine from the evidence whether the defendants were guilty of negligence in failing to maintain such warning devices the instruction was more favorable to plaintiffs than to defendants.

Judgments affirmed.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing was denied January 17, 1949, and appellants' petition for a hearing by the Supreme Court was denied February 24, 1949. Carter, J., voted for a hearing.