[Civ. No. 4868.   Fourth Dist.   Oct. 27, 1954.]

HELEN LUGO et al., Plaintiffs; FRANCES SANDOVAL et al., Appellants, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY (a Corporation) et al., Respondents.

Sherwood Roberts and Daubney & Stevens for Appellants.

Robert W. Walker, William F. Brooks and Luce, Forward, Kunzel & Scripps for Respondents.

BARNARD, P. J.—This is a damage action arising from a collision between a locomotive and a truck.

The accident occurred at about 11:30 a. m. on June 6, 1952, at a point a mile or two north of Oceanside, where a black-top road leading easterly from Highway 101 crossed the railroad tracks. This road was formerly the main access from the highway to Rancho Santa Marguerita, now Camp Pendleton. About 1943, the Marines established a new entrance to Camp Pendleton and placed a locked gate across this old road, just east of the tracks. Thereafter, this old road was used occasionally by certain lessees and permittees who were given keys to the gate by the Marine officials. In 1950, the defendant Santa Fe and the Navy, on behalf of the Marine Corps, entered into a contract requiring the "Government" to erect a gate to prevent the use of this crossing by the public, and to give the railroad 24 hours notice of any proposed use so that the crossing could be flagged, and further providing that the government was not to permit others to use the crossing without the written permission of the railroad. However, the road was used at times, without such notice being given. No notice was given on the occasion here involved.

On this occasion Roy Witman, who had a permit to run sheep in this area and had been given a key for this gate, had bought a load of hay from one Riggs. Earlier that day Witman escorted this truck through the main entrance to Camp Pendleton and to a point about 200 yards east of this locked gate. The truck was towing two trailers, the whole outfit being about 60 feet long, and was driven by Edward Lugo. He was accompanied by Baltazar Sandoval who was apparently his guest. After the hay was unloaded Witman offered to let them through this gate, since the outfit was too long to turn around in the space available, and opened the gate. He had in the past let several such trucks through the gate. There was a line of trees just north of the gate, extending along the east side of the tracks for some 200 to 250 yards, which obscured the view to the north. The truck came out of the gate, traveling about 3 to 5 miles an hour, and when it reached the main line track it was struck by a train traveling from Los Angeles to San Diego. Lugo

and Sandoval were killed. The distance from the gate to the main line track was some 60 or 65 feet, and there were no warning signals at this crossing.

Witman testified that he walked beside the front wheel of the truck looking for trains from the north; that it was a little difficult to see north; that the cab of the truck passed him when he was about half-way to the main track; that he then looked over the bed of the first trailer and saw the train coming about 450 to 600 feet away; that he turned and fled; and that he heard no whistle. A Marine guard stationed near the gate testified that he saw the truck come out the gate; that Witman came along the edge of the front bumper and nodded a couple of times; that when Witman was almost to the tracks, the cab passed him; that the witness then saw the train north of the trees; and that "he blew his whistle once." The fireman testified that he was seated on the left side of the cab; that when he first saw it the truck was about 45 feet from the main track, and the train was from 450 to 600 feet away; that when he saw the truck he told the engineer to whistle and the engineer immediately did so; that when the truck kept coming he told the engineer to "hold it," which means to apply the emergency brakes; that the engineer immediately put the brakes in emergency; that this was just before the collision; that the train was running about 70 to 73 miles an hour; and that there was a standard automatic bell on the engine which was ringing continuously at all times since the train left Santa Ana. The engineer testified that he was seated on the other side of the engine; that he had made this run about twice a week for the last 10 years; that the train was going between 70 and 73 miles an hour; that when the fireman hollered to whistle he blew the whistle and it continued to blow until the collision occurred; that when the fireman yelled to "hold it" he applied the brakes with his other hand; that he knew that this crossing was occasionally used as he had seen flag- · men there when it looked like they were going to move a truck or tank across the tracks; and that the automatic bell was ringing at all times since the train left Santa Ana.

This action was brought by the heirs of the two men who were killed and the owner of the truck, it being alleged that the train was negligently operated by the railroad company and its employees. The answer denied negligence, alleged contributory negligence on the part of both the driver of the truck and his passenger, and further alleged that the

death of Sandoval was caused solely by the negligence of the driver of the truck. A jury returned a verdict in favor of the defendants as against all of the plaintiffs, and a motion for a new trial was denied. This appeal is presented on behalf of the heirs of Sandoval only.

It is first contended that the court committed prejudicial error by giving any instruction with respect to contributory negligence on the part of Sandoval. It is argued that there is no evidence of any want of care on Sandoval's part; and that in the absence thereof such an instruction was confusing and misleading. While in such a case a passenger is subject to different rules than the driver, it does not follow that he may not owe some duty of care, the nature and extent of which will depend upon the circumstances of each case. Ordinarily, the question of contributory negligence of a guest or passenger in an automobile is one for the jury. When the circumstances are such that it cannot be said as a matter of law that there was no contributory negligence, the question is properly left to the jury as a question of fact. (*Martindale* v. *Atchison, T. & S. F. Ry. Co.,* 89 Cal.App.2d 400 [201 P.2d 48] ; *Smellie* v. *Southern Pac. Co.,* 212 Cal. 540 [299 P. 529] ; *Wagner* v. *Atchison, T. & S. F. Ry. Co.,* 210 Cal. 526 [292 P. 645] ; *Matsumoto* v. *Renner,* 90 Cal.App.2d 406 [202 P.2d 1051].)

The court here repeatedly instructed the jury that if it found that Lugo was guilty of any contributory negligence such negligence could not be imputed to Mr. Sandoval, and would not bar his wife and children from recovering in this case. The jury was further instructed that the law presumes that Sandoval was exercising care and was obeying the law; that these presumptions are a form of evidence; that when there is other evidence which conflicts with such a presumption it is the jury's duty to weigh such other evidence against the presumption and decide which, if either, predominates; that the case must be decided solely upon the evidence received, the inferences that may reasonably be drawn therefrom, and such presumptions as the law provides; that the jury was to consider all of the instructions as a whole and not to single out any instruction, in whole or in part; that the applicability of some of these instructions will depend upon the conclusions reached by the jury as to what facts are shown by the evidence; and that if any instruction applies only to a state of fact which the jury finds does not exist, it is to be disregarded.

The situation here was quite different from the ordinary one where an automobile is approaching railroad tracks which cross a public road. Sandoval was present when this gate was unlocked and could see that the distance between the gate and the track was only about the length of the equipment in which he was riding, and that the view was obstructed until the cab of the truck should pass the line of the trees. The entire circumstances were such as to indicate that caution was required, and might reasonably be taken as calling for the exercise of some care and caution on his part. Whether or not he did what an ordinarily careful person would have done under the same circumstances was a question of fact which was properly left to the jury. Moreover, the record indicates that the question of contributory negligence on the part of Sandoval was not a controlling element in the minds of the jury. After deliberating for a time the jury returned and asked to have the court repeat its instructions by reading "the portions of the law pertaining to both trains approaching crossings, and automobiles, or vehicles approaching crossings." This was done and, at its request, the testimony of Witman and the Marine guard was read to the jury. No prejudicial error appears in this connection.

It is further contended that even if such an instruction was proper "the instruction given in this case was in error." It is argued that there was no evidence that Sandoval knew that the driver was negligent, or was aware that the train was so close; that the instruction given failed to tell the jury that the rider need not seize the controls nor warn the driver unless he was aware of the necessity for, and had time for, such a warning; and that another instruction offered by the plaintiff, and refused as sufficiently covered, was a more accurate and fuller explanation of the law. The instruction given is an exact copy of BAJI 222, line C (1950 Supp.). The one refused as covered was not only handed in too late to permit a full examination, as pointed out by the court, but it adds nothing to the effect of the instruction given. A number of other instructions were given which were also applicable to this question and the instructions, as a whole, fully and fairly presented the question to the jury and neither error nor prejudice appears.

It is next contended that these appellants were prejudiced by the admission into evidence of the contract between the railroad and the government, above referred to, and by the instructions concerning it. It is argued that the duty

of ordinary care owed by the railroad to persons using a private crossing could not be reduced by such a contract; that the jury would naturally get the impression that the railroad owed no duty of care, or a lesser duty, in the absence of a 24-hour notice; that the jury would naturally be confused by the court's instruction that this contract did not relieve the defendants from their duty to exercise ordinary care toward those using the crossing; and that the contract was immaterial since there was no evidence that the decedents, the government's permittees, or the train crew had any knowledge of it. The court instructed the jury that this contract was admitted in evidence to be considered on the issue of ordinary care by the defendants; that it was only a factor to be considered, along with all other evidence, in determining whether or not the defendants had used ordinary care; that the existence of the agreement did not in any way relieve the defendants from the obligation of using ordinary care toward persons using the crossing involved, including Mr. Lugo and Mr. Sandoval; and that the contract was not to be considered in determining whether either of the deceased used ordinary care, or whether or not either of them was guilty of contributory negligence. The matter was material for the purpose for which it was admitted, neither it nor the instructions given in any way suggested that it relieved the defendants from the duty of exercising ordinary care, and no possible prejudice appears.

██ It is next contended that the instruction given on the railroad's statutory duty under section 7604 of the Public Utilities Code was not complete or accurate, and that the appellants were prejudiced by the refusal of two instructions requested by the appellants. The instruction given quoted that section of the Public Utilities Code, and told the jury that if the defendants failed to either ring a bell or blow a whistle as required by that statute such a failure would constitute negligence on their part, unless overcome by other evidence disclosing that such failure was excusable and such as might reasonably have been expected from a person of ordinary prudence. The instructions requested, and refused as sufficiently covered, were to the effect that if the railroad's agents and employees had knowledge that persons were using the crossing without giving notice or employing flagmen this knowledge must be imputed to the railroad, and that if the jury found that the Santa Fe had knowledge that this crossing was being used without advance notice and without flag-

men, it could not rely on the assumption that such flagmen would be utilized. There was undisputed evidence that a bell was rung on this occasion for more than the required distance, and there was no evidence which would support an inference that this section of the Public Utilities Code was violated. While the knowledge of its agents as to the use of the crossing was imputable to the railroad company, the failure to give those instructions could not conceivably have affected the result.

■ It is next contended that the court erred in giving an instruction on "unavoidable accident" since nothing in the evidence or pleadings presented a situation where that rule was applicable. While this instruction could well have been omitted, the giving of it could have resulted in no harm. (*Martindale* v. *Atchison, T. & S. F. Ry. Co.*, 89 Cal.App.2d 400 [201 P.2d 48].)

■ It is next contended that an instruction "on the duty to stop, look and listen" was prejudicial; that while the court also told the jury that the instruction should be applied only if it found that the facts justified its application, "there is no standard set forth"; and that the instruction proposed by the appellants was a more complete statement of the law. The offered instruction was substantially the same as the one given, and no prejudice appears.

■ Finally, it is contended that it was prejudicial to instruct the jury that "if the view of the tracks is obstructed then greater caution is required in approaching them," and in instructing the jury that if the engineer was exercising ordinary care as he approached this crossing he had a right to assume that the deceased had normal faculties of sight and hearing and would use those faculties in the exercise of ordinary care for his own safety. While admitting that these instructions were correct, it is argued that the court failed to tell the jury that if the crossing was obstructed the standard of care required of the railroad might be greater than in the case of a less hazardous crossing, and in failing to tell the jury that the deceased was also entitled to assume that the operators of the train would follow the statutory requirements and exercise due care. There was no evidence that the railroad company did not comply with the statute. In the instructions as a whole these matters were sufficiently covered, and neither error nor prejudice appears.

We find nothing in the record which discloses prejudicial error, or which in any way indicates a miscarriage of justice.

The instructions given were unusually full and complete, and adequately covered every issue raised.

The purported appeal from the order denying a new trial is dismissed. The judgment is affirmed.

Griffin, J., concurred.